1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

MARK and DEBORAH ARNOLD,

8                        Plaintiffs,

9    v.

10   WELLS FARGO BANK, N.A., et al.,

11                        Defendants.

12

CASE NO. C13-5992 BHS

ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

13          This matter comes before the Court on Defendants Bank of America, N.A.

14   ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo

15   Bank, N.A.'s ("Wells Fargo") motion for summary judgment (Dkt. 15) and Defendant

16   Quality Loan Service Corporation of Washington's ("QLS") motion for summary

17   judgment (Dkt. 19).  The Court has considered the pleadings filed in support of and in

18   opposition to the motions and the remainder of the file and hereby grants the motions for

19   the reasons stated herein.

20                          **I. PROCEDURAL HISTORY**

21          On October 11, 2013, Plaintiffs Mark and Deborah Arnold ("Arnolds") filed a

22   complaint against BANA, MERS, Wells Fargo, and QLS (collectively "Defendants") in

Pierce County Superior Court for the State of Washington.  Dkt. 1-1 ("Comp.").  The Arnolds allege numerous causes of action.  *Id.*

On November 18, 2013, QLS removed the matter to this Court.  Dkt. 1.

On September 18, 2014, BANA, MERS, and Wells Fargo filed a motion for summary judgment (Dkt. 15) and QLS filed a motion for summary judgment (Dkt. 19). On October 6, 2014, the Arnolds responded.  Dkt. 21.  On October 10, 2014, BANA, MERS, and Wells Fargo replied (Dkt. 22) and QLS replied (Dkt. 23).

## II. FACTUAL BACKGROUND

The Arnolds own the real property commonly known as 3721 Soundview Drive West, University Place, WA 98466 ("Property").  Comp. ¶ 6.  On about August 17, 2006, non-party Homestone Mortgage, Inc. ("Homestone") originated a $600,000 loan in favor of the Arnolds.  Dkt. 17, Declaration of Andrea Kruse ("Kruse Dec."), Ex. A ("Note"). The loan is memorialized by an Adjustable Rate Note dated August 17, 2006.  *Id.*  The loan is secured by the Property via a deed of trust ("DOT").  Comp. ¶ 16, Ex. A.  The DOT names Homestone as "Lender," the Arnolds as "Borrowers," Commonwealth as "Trustee," and MERS as "nominee for Lender and Lender's successors and assigns."  *Id.*

The loan was sold multiple times after origination.  Wells Fargo purchased the loan from Homestone on or about September 5, 2006.  Kruse Dec. ¶ 3.  On October 1, 2006, Wells Fargo sold the loan to an asset-backed pool owned by Merrill Lynch.  *Id.* When Wells Fargo purchased the loan, Homestone indorsed the Note as specifically payable to Wells Fargo.  Note at 7.  Wells Fargo retained servicing rights for the loan and acted as an agent of the owner for the purpose of communicating with the Arnolds,

receiving and processing payments, and enforcing the loan.  Kruse Dec. ¶ 4.  Ms. Kruse declares that Wells Fargo indorsed the Note in blank to Merrill Lynch.  *Id.* ¶ 7.

BANA purchased Merrill Lynch on September 14, 2008.  Comp. ¶ 52.  Upon purchase, BANA became successor to Merrill Lynch as administrator of the pool of mortgages that contains the loan.  Kruse Dec. ¶ 3.

The DOT was assigned twice.  First, on June 16, 2011, MERS assigned its record interest in the Deed of Trust to Wells Fargo, which was recorded on June 20, 2011.  Comp., Ex. C.  Then, on January 4, 2013, Wells Fargo assigned the DOT to BANA via a Corporate Assignment of Deed of Trust recorded January 4, 2013.  Comp., Ex. E.

The Arnolds have failed to make the required payments on the loan and Wells Fargo initiated a foreclosure action.  It is undisputed that the Arnolds' last payment was February 2011.  On February 11, 2013, Wells Fargo recorded the appointment of QLS as successor trustee of the DOT.  Comp., Ex. F ("Appointment").  Wells Fargo executed the Appointment as "servicer and attorney-in-fact" for BANA.  *Id.*  That same day, QLS served the Arnolds with a notice of default.  Comp., Ex. G ("Notice of Default").  The Notice of Default identifies BANA as the "owner of the Note secured by the Deed of Trust."  *Id.*  On March 19, 2013, QLS recorded a notice of trustee's scheduling the non-judicial foreclosure of the Property for July 19, 2013.  Comp., Ex. H ("Notice of Sale").

Through discovery, Wells Fargo has learned that the Arnolds rented the property from September 2011 until February 2013 receiving $2,300 per month from the tenant.

## III. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

1   attested by that party contradict facts specifically attested by the moving party.  The

2   nonmoving party may not merely state that it will discredit the moving party's evidence

3   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

4   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

5   nonspecific statements in affidavits are not sufficient, and missing facts will not be

6   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

7   **B.    Defendants' Motions**

8          As an initial matter, Defendants contend that they are entitled to summary

9   judgment because the Arnolds have failed to submit any evidence in opposition to the

10  motion.  Dkt. 22 at 2; Dkt. 23 at 1.  While the Court is not required to "scour the record in

11  search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.

12  1996), the Court must evaluate "the record, taken as a whole . . . ."  *Matsushita*, 475 U.S.

13  at 586.  In this case, the current record contains numerous documents regarding the loan

14  and the foreclosure, and the Arnolds do contest Defendants' assertions of fact.  In such

15  circumstances, the Court must consider the record and the disputed facts.  Therefore, the

16  Court declines to grant Defendants' motions because of the Arnolds' failure to submit

17  evidence in opposition.

18         With regard to the Arnolds' claims for damages, they have failed to meet their

19  burden.  The Arnolds, as the nonmoving party, have failed to make a sufficient, or any,

20  showing on the essential element of actual damages.  Although the verified complaint

21  alleges damages, the Arnolds' have failed to submit any actual evidence of damages.

22

1   Therefore, Defendants are entitled to judgment on all claims for damages.  *See Celotex*,

2   477 U.S. at 323.

3          With regard to the declaratory and equitable claims, the parties dispute the chain

4   of ownership of the relevant documents.  Andrea Kruse, vice president of loan

5   documentation for BANA, declares that

6          Wells Fargo purchased the Loan from Homestone on or about September 5,
       2006. On or about October 1, 2006, Wells Fargo sold the Loan to an asset-
7       backed pool administered by Merrill Lynch. Bank of America purchased
       Merrill Lynch on or about January, 2009. Bank of America is therefore
8       successor to Merrill Lynch as administrator of the pool of mortgages.

9   Kruse Dec. ¶ 3.  The Arnolds contest this evidence on two bases: (1) Wells Fargo claimed

10  ownership of the loan on July 5, 2011; and (2) the assignment by MERS.  Dkt. 21 at 6.

11  First, the Arnolds misconstrue Wells Fargo's response to the Arnolds qualified written

12  request.  The Arnolds claim that Wells Fargo "claimed ownership" of the loan in that

13  letter.  Wells Fargo, however, only stated that it "purchased the loan after closing."  Dkt.

14  6-2 at 71.  This statement is consistent with Ms. Kruse's declaration and does not create a

15  question of fact regarding ownership of the Note.

16         Second, on June 16, 2011, MERS assigned its interest in the DOT to Wells Fargo.

17  *Id.* at 68.  The Arnolds argue that this raises a question of fact of ownership because Ms.

18  Kruse contends that BANA owned the note in 2011.  Dkt. 21 at 6.  At that time, however,

19  Defendants were under the impression that MERS could be a legally recognized

20  beneficiary of the DOT.  In *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d 83

21  (2012), the Washington Supreme Court concluded otherwise and also concluded that

22  "Washington's deed of trust act contemplates that the security instrument will follow the

note, not the other way around." *Id.* at 104.  The fact that Defendants believed that the DOT could be separated from the Note does not raise a question of fact as to what actually occurred with the Note.  Therefore, the Arnolds have failed to show that a question of fact exists regarding ownership of the note and attendant DOT, and the Court grants Defendants' motions on the Arnolds' declaratory and equitable claims.

The last issue is dissolving the preliminary injunction restraining the foreclosure sale and disbursement of the funds in the state court's registry.  The Court concludes that the preliminary injunction shall be dissolved because Defendants have succeeded on the merits of all of the Arnolds' claims.  The Court has interpreted the DTA such that security for a preliminary injunction shall be disbursed to Defendants.  *Church v. Assemblies of God Loan Fund*, No. C12-5175, 2013 WL 392491 (W.D. Wash. Jan. 31, 2013).  Therefore, the Court grants Defendants' motions on these issues and the preliminary injunction is dissolved and, while the proper procedure for doing so may be unclear, the state court should disperse the funds to Defendants.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motions for summary judgment (Dkts. 15 & 19) are **GRANTED**.

Dated this 13th day of November, 2014.

BENJAMIN H. SETTLE
United States District Judge